IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ALAN YOCOM,

    Plaintiff,

v.

WARDEN RANDY GROUNDS, et al.,

    Defendants.

No. C 11-5741 SBA (PR)

**ORDER SERVING COGNIZABLE CLAIMS; AND ADDRESSING PLAINTIFF'S PENDING MOTIONS**

(Docket nos. 5, 7)

## INTRODUCTION

Plaintiff, a state prisoner currently incarcerated at the Correctional Training Facility (CTF), has filed a <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983. He alleges that Defendants violated his constitutional rights while he was housed at CTF on August 31, 2011, and thereafter until he signed the complaint. Plaintiff has filed a motion for appointment of counsel (docket no. 5) and a motion for leave to amend the complaint (docket no. 7), which will both be addressed below. He has also filed a motion for leave to proceed <u>in forma pauperis</u> (docket no. 9), which will be granted in a separate written Order.

Venue is proper because the events giving rise to the claim are alleged to have occurred at CTF, which is located in this judicial district. <u>See</u> 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names the following Defendants, who are all prison officials at CTF: Warden Randy Grounds; Chief Disciplinary Officer J. A. Soars; Senior Hearing Officer J. M. Biggs; Correctional Counselor Diaz; Facility Captains P. A. Santiago and Lomeli; Correctional Sergeant Ramos; Correctional Officers Cordoba and Fick; Chief of Inmate Appeals D. Foston; Institutional Appeals Coordinators S. Lacey and P. Mullen; Chief Medical Officer M. Sepulveda; Chief Surgeon Bright; Physicians Rosana Lim Javate and J. Chudy; Physician Assistant Trent; and "1-50 John or Jane Does custody defendants." (Compl. at 2-3, Attach. to Compl. at 7.)

The Court now reviews the allegations in the complaint and addresses Plaintiff's pending motions below.

# DISCUSSION

## I. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. Id. § 1915A(b)(1), (2). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

## II. Legal Claims

### A. Retaliation Claims

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. See Perry v. Sindermann, 408 U.S. 593, 597 (1972).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional

order and discipline); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation).

Plaintiff alleges that on August 31, 2011, he was transported back to CTF from a settlement conference hearing held at Solano State Prison, regarding another case he was litigating against CTF at the time. Upon his return Plaintiff claims that Defendants subjected him to a series of retaliatory acts depriving him of his First Amendment right to redress.

First, Plaintiff alleges that Defendants Javate and Chudy "refuse[d] to treat severe (acute and chronic) pain complaints with necessary narcotics . . . [as] a direct retaliation for and punishment for litigations against Dr[.] Javate and the prison officials . . . ." (Attach. to Compl. at 13.) Plaintiff then claims that Defendants Lomeli, Diaz, Ramos, Cordoba, and Fick subjected him to unnecessary physical abuse and disciplinary measures including "shov[ing] him in the cell injuring his neck and back on (8-31-11)," (id.), and "imposing/inflicting severe punishments of hard c-status with fully suspended privileges" (id. at 11). Plaintiff further claims that Defendants Sepulveda, Bright, and Trent wrongfully stripped him of his "long standing housing restrictions and accommodations" as a retaliatory act. (Id. at 16.) Plaintiff also alleges that Defendants Foston, Lacey, and Mullen prevented his proper use of the prison's grievance system, denying him due process (as explained below) and chilling his First Amendment rights. (Id. at 12.) Finally, Plaintiff raises similar allegations of due process violations and retaliation by Defendants Grounds, Santiago, Soars, and Biggs because of their involvement in reviewing his grievances, approving punishments imposed against him, as well as ignoring relevant information that should have been used in assessing his conduct. (Id. at 14.)

Liberally construed, Plaintiff's allegations satisfy the pleading requirements for a First Amendment retaliation claim against all the aforementioned Defendants.

### B. Claims Relating to Grievance System

Interests protected by the Due Process Clause may arise from two sources -- the Due Process Clause itself and laws of the States. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). There is no constitutional right to a prison administrative appeal or grievance system. Ramirez v. Galaza,

3

334 F.3d 850, 860 (9th Cir. 2003).

However, Title 15 of the California Code of Regulations, section 3084, et seq. grants state prisoners the right to a prison appeals process. The regulations are purely procedural -- they require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards. Instead, they provide for flexible appeal time limits, see Cal. Code Regs. tit. 15, § 3084.6, and, at most, that "no reprisal shall be taken against an inmate or parolee for filing an appeal," id. § 3084.1(d). A provision that merely sets procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993); see, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (same); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (same). Accordingly, a prison official's failure to process grievances, without more, is not actionable under § 1983. See Buckley, 997 F.2d at 495; see also Ramirez, 334 F.3d at 860 (prisoner's claimed loss of liberty interest in processing of his appeals does not violate due process because prisoners lack a separate constitutional entitlement to a specific prison grievance system).

Although there is a First Amendment right to petition government for redress of grievances, there is no right to a response or any particular action. See Flick v. Alba, 932 F.2d 728 (8th Cir. 1991) (prisoner's right to petition the government for redress "is not compromised by the prison's refusal to entertain his grievance").

Here, Plaintiff alleges that he was conspired against by Defendants Foston, Lacey, and Mullen, who prevented him from using the prison's grievance process to its full extent. (Attach. to Compl. at 12.) Plaintiff also claims that Defendants Grounds, Santiago, Soars, and Biggs fraudulently conducted review of his grievances and that they improperly and unethically handled his claims. (Id. at 13-14.)

Therefore, liberally construing the complaint, the Court finds that Plaintiff has stated a cognizable due process claim relating to the prison grievance system again the aforementioned Defendants.

4

### C. Disability Discrimination Claim

Plaintiff alleges that he suffered discrimination on the basis of disability.

#### 1. Cause of Action

Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.§ 12101 et seq., and § 504 of the Rehabilitation Act of 1973, as amended and codified in 29 U.S.C. § 794(a), prohibit discrimination on the basis of disability in the programs, services or activities of a public entity. The elements of a cause of action under Title II of the ADA are: (1) that the plaintiff is a qualified individual with a disability; (2) that the plaintiff was either excluded from participation in or denied the benefits of a service, program, or activity of a public entity, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of disability. Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th 2001); 42 U.S.C. § 12132. A cause of action under § 504 of the Rehabilitation Act essentially parallels an ADA cause of action. See Olmstead v. Zimring, 119 S. Ct. 2176, 2182 (1999); Duvall, 260 F.3d at 1135.

A qualifying "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

#### 2. Proper Defendants

Plaintiff alleges that Defendants Sepulveda, Bright, and Trent denied him of the benefits granted to him under the ADA by stripping away his disability status. (Attach. to Compl. at 15-17.)

Plaintiff cannot bring an ADA or § 504 action against individual officers, because the proper defendant in such actions is the public entity responsible for the alleged discrimination. Nor can he bring a § 1983 action against Defendants based on allegedly discriminatory conduct. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C.

5

§ 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). Therefore, Plaintiff's disability discrimination claims against Defendants are DISMISSED with prejudice.

The proper defendants to Plaintiff's disability discrimination claims are the public entities that allegedly denied him equal access to their programs: CTF and the California Department of Corrections and Rehabilitation (CDCR). State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). State prisons that receive federal financial assistance are covered by the Rehabilitation Act. See Armstrong, 124 F.3d at 1022-23; see also Clark v. California, 123 F.3d 1267, 1271 (9th Cir. 1997) (noting that the California prison system then accepted federal funds and thus was covered by the Rehabilitation Act).

As state agencies, these entities are shielded from suit in federal court unless they waive their sovereign immunity or Congress has validly abrogated their sovereign immunity in the applicable statute. See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985). In Board of Trustees of the Univ. of Ala. v. Garrett, 121 S. Ct. 955 (2001), the Supreme Court held that Congress did not have the power to abrogate the States' Eleventh Amendment immunity under Title I of the ADA, but declined to reach the question whether Congress validly abrogated the States' immunity as to Title II. See Garrett, 121 S. Ct. at 960 n.1. The Court specifically noted that Title II has somewhat different remedial provisions from Title I. Id. For purposes of initial review, the Court will assume that the California prisons do not enjoy Eleventh Amendment immunity with respect to Plaintiff's ADA claims.

As to the Rehabilitation Act, the Ninth Circuit has held that, "[b]ecause California accepts federal funds under the Rehabilitation Act, California has waived any immunity under the Eleventh Amendment" as to that Act's anti-discrimination provisions. See Clark, 123 F.3d at 1271; see also Douglas v. California Dept. Youth Authority, 271 F.3d 812, 819 (9th Cir.), amended, 271 F.3d 910 (9th Cir. 2001) (adhering to Clark after Supreme Court's decision in Garrett.) Thus, Plaintiff may only pursue claims for both money damages and prospective injunctive relief under the

1 Rehabilitation Act directly against the CTF and the CDCR.

2 In sum, assuming Plaintiff has a valid disability discrimination claim, he may assert the claim in an amendment to the complaint against CTF and the CDCR, but not against any individual defendants.

### 3. Analysis of Claim

Plaintiff merely alleges that the aforementioned Defendants denied him certain benefits granted to him under the ADA by stripping him of his disability status; however, as mentioned above, he does not elaborate on what his disability is. (Attach. to Compl. at 15-17.) Therefore, these allegations do not establish that he is an individual with a disability under the federal statutes.

In addition, Plaintiff has not alleged discriminatory conduct. He alleges that the aforementioned Defendants denied him certain benefits, but he does not allege that they did so because he was disabled. He does not allege that he was treated differently than similarly-situated nondisabled inmates and he does not allege that he was excluded from participation in a prison program or service because of his disability. Therefore, while Plaintiff could have valid claims under the Eighth Amendment (as explained below), he does not appear to have a cognizable disability discrimination claim.

Plaintiff's ADA and Section 504 claims, therefore, are DISMISSED with leave to amend. Plaintiff may reassert the claims in an amendment to the complaint if he can in good faith allege that he is an individual with a disability under the federal statutes, that the prison discriminated against him on the basis of his "disability," and if he names the proper Defendants.

### D. Deliberate Indifference to Serious Medical Needs

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059. A "serious" medical need exists if the

7

1 failure to treat a prisoner's condition could result in further significant injury or the "unnecessary
2 and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). A prison official is deliberately
3 indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and disregards
4 that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837
5 (1994).

Plaintiff claims that after he was diagnosed as suicidal and committed to "'Suicide Prevention & Response' hospitalization" in the on-site prison hospital, he was punished by Defendants Ramos, Cordoba, and Fick for the acts that resulted from his suicidal state of mind. (Attach. to Compl. at 9.) Plaintiff's history of mental illness and his hospitalization show a serious medical need. These Defendants' indifferent treatment of Plaintiff and their alleged failure to follow protocol in considering his mental health in disciplinary proceedings, (id. at 18), exacerbated his mental illness thereby causing him to fear himself and to be hospitalized as well as placed under "suicide watch" (id. at 11). Plaintiff also alleges that he suffers from other serious medical needs, including his "chronic [and] severe" neck pain, and he claims that Defendants Javate and Chudy were deliberately indifferent in their refusal to offer him treatment for this pain. (Id. at 18.) Liberally construed, Plaintiff's allegations of Defendants' refusal to treat him for his mental problems and neck pain state a cognizable claim for deliberate indifference to his serious medical needs.

### E.  **Violations of the *Plata* and *Coleman* Class Action Settlement Agreements**

The United States Supreme Court upheld the decision of a three-judge Ninth Circuit in Plata v. Schwarzenegger, Case No. 3:01-CV-01351-TEH (N.D. Cal. ), aff'd in part, 603 F.3d 1088 (9th Cir. 2010), that identified overcrowding as the primary cause of the inadequacies in the mental and medical health care in prison and issued a remedial order requiring California to reduce the prison population to 137.5% of the prisons' design capacity within two years. See Brown v. Plata, 131 S. Ct. 1910, 1922-28 (2011). Meanwhile, Coleman v. Wilson, 912 F. Supp. 1282 (E.D. Cal. 1995), which involved a class of prisoner-plaintiffs with serious mental disorders, has been consolidated with the aforementioned Plata case. Plaintiff claims that Defendants violated the federal class action lawsuit agreements in Plata and Coleman based on their actions of retaliation and deliberate

indifference to his serious medical needs. However, a remedial court order, standing alone, cannot serve as the basis for liability under 42 U.S.C. § 1983 because such orders do not create "rights, privileges or immunities secured by the Constitution and laws" of the United States. Green v. McKaskle, 788 F.2d 1116, 1123-24 (5th Cir. 1986). Therefore, these claims are DISMISSED for failure to state a claim. See id. (remedial decrees are means by which unconstitutional conditions are corrected but do not create or enlarge constitutional rights).

### F. Claims Against Doe Defendants

Plaintiff identifies "1-50 John or Jane Does custody defendants" whose names he intends to learn through discovery. The use of Doe defendants is not favored in the Ninth Circuit. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify them. Id. Failure to afford the plaintiff such an opportunity is error. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Accordingly, the claims against these Doe Defendants are DISMISSED from this action without prejudice. Should Plaintiff learn these Doe Defendants' identities through discovery, he may move to file an amended complaint to add them as named defendants. See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

### III. Motion for Appointment of Counsel

On February 15, 2012, Plaintiff filed a motion with the Court requesting appointment of counsel to represent him in this action. He claims that he cannot litigate this action on his own behalf because he is a layperson untrained in law and is an indigent person unable to pay for the service of counsel. (Docket. no. 5.)

The Court is unable to assess at this time whether exceptional circumstances exist which would warrant seeking volunteer counsel to accept a pro bono appointment. The proceedings are at an early stage and it is premature for the Court to determine Plaintiff's likelihood of success on the merits. Moreover, Plaintiff has been able to articulate his claims adequately pro se in light of the complexity of the issues involved. See Agyeman v. Corrections Corp. of America, 390 F.3d 1101, 1103 (9th Cir. 2004). Accordingly, the request for appointment of counsel at this time is DENIED.

9

This does not mean, however, that the Court will not consider appointment of counsel at a later juncture in the proceedings, that is, after Defendants have filed their dispositive motion and the Court has a better understanding of the procedural and substantive matters at issue. Therefore, Plaintiff may file a renewed motion for the appointment of counsel after Defendants' dispositive motion has been filed. If the Court decides that appointment of counsel is warranted at that time, then it can seek volunteer counsel to agree to represent Plaintiff pro bono.

**IV.     Motion for Leave to Amend the Complaint**

In the complaint, Plaintiff seeks $1,000,000 in compensation, as well as unlimited punitive damages. (Compl. at 3-4.) However, in a motion for leave to amend the complaint filed on February 28, 2012, Plaintiff requests that his prayer for relief be amended to seek damages according to proof as well as attorney's fees. (Docket no. 7.) Therefore, the Court GRANTS the motion for leave to amend the complaint.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1.      Plaintiff has stated a cognizable First Amendment retaliation claim against Defendants Grounds, Santiago, Soars, Biggs, Lomeli, Diaz, Ramos, Cordoba, Fick, Foston, Lacey, Mullen, Sepulveda, Bright, Trent, Javate, and Chudy.

2.      Plaintiff has stated a cognizable due process claim relating to the prison grievance system against Defendants Grounds, Santiago, Soars, Biggs, Foston, Lacey, and Mullen.

3.      Plaintiff's disability discrimination claim against Defendants Sepulveda, Bright, and Trent, who are individual prison officials, are DISMISSED WITH PREJUDICE. If Plaintiff names CTF and the CDCR as Defendants, then his ADA and Section 504 claims against these public entitles are DISMISSED WITH LEAVE TO AMEND, as directed above. Within **twenty-eight (28) days** of the date of this Order, Plaintiff may file an amended disability discrimination claim as set forth above in Section II(C) of this Order. (Plaintiff shall resubmit only that claim and not the entire complaint.) The amended claim must be submitted on an amendment to the complaint. It must include the caption as well as the civil case number of this action (C 11-5741 SBA (PR)) and the words AMENDMENT TO THE COMPLAINT on the first page. The failure to do so will result in

the dismissal without prejudice of Plaintiff's disability discrimination claim.

4. Plaintiff has stated a cognizable claim for deliberate indifference to his serious medical needs against Defendants Ramos, Cordoba, Fick, Javate, and Chudy.

5. Plaintiff's claims of violations of the Plata and Coleman class action settlement agreements are DISMISSED for failure to state a claim.

6. Plaintiff's claims against the Doe Defendants are DISMISSED from this action without prejudice.

7. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint and all attachments thereto (docket no. 1), and a copy of this Order to the following CTF Prison Officials: **Warden Randy Grounds; Chief Disciplinary Officer J. A. Soars; Senior Hearing Officer J. M. Biggs; Correctional Counselor Diaz; Facility Captains P. A. Santiago and Lomeli; Correctional Sergeant Ramos; Correctional Officers Cordoba and Fick; Chief of Inmate Appeals D. Foston; Institutional Appeals Coordinators S. Lacey and P. Mullen; Chief Medical Officer M. Sepulveda; Chief Surgeon Bright; Physicians Rosana Lim Javate and J. Chudy; and Physician Assistant Trent.** The Clerk of the Court shall also mail a copy of the complaint and a copy of this Order to the State Attorney General's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

8. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty-three (63) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that

11

more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty-three (63) days** from the date on which the request for waiver was sent or **twenty-one (21) days** from the date the waiver form is filed, whichever is later.

        9.      Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

        a.      No later than **ninety-one (91) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

        b.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **sixty-three (63) days** after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to pro se plaintiffs facing a summary judgment motion:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

        Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex

12

Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim).  Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion.  Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration.  Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

        c.     Defendants shall file a reply brief no later than **twenty-eight (28) days** after the date Plaintiff's opposition is filed.

        d.     The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

10.    Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure.  Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

11.    All communications by Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

12.    It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion

13.    Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the deadline sought to be extended.

14.    The Court DENIES Plaintiff's motion for appointment of counsel (docket no. 5).

15.    The Court GRANTS Plaintiff's motion for leave to amend the complaint (docket no. 7) to allow that his prayer for relief be amended to seek damages according to proof as well as attorney's fees.

16.    This Order terminates Docket nos. 5 and 7.

IT IS SO ORDERED.

DATED:   6/12/12

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ALAN YOCOM,

        Plaintiff,

  v.

WARDEN RANDY GROUNDS et al,

        Defendant.
                                                /

Case Number: CV11-05741 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 14, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Michael Alan Yocom K-22960
CTF-Soledad State Prison
Central Facility
P.O. Box 689
Soledad, CA 93960-0689

Dated: June 14, 2012

Richard W. Wieking, Clerk
By: Lisa Clark, Deputy Clerk

G:\PRO-SE\SBA\CR.11\Yocom5741.service&penMOTS.wpd     14